IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, Plaintiff, v. CG BELLKOR, LLC, *et al.*, Defendants. | Civil No. 3:13-cv-39 (DJN) |

MEMORANDUM OPINION

The parties come before the Court by consent pursuant to 28 U.S.C. § 636(c)(1) on Plaintiff's Supplemental Brief Regarding Damages (ECF No. 138) and Defendants' Response to Plaintiff's Supplemental Brief Regarding Damages (ECF No. 140). Both parties have briefed the issue of damages, rendering the matter ripe for resolution.

I. Background

On October 29, 2013, the Court entered a Memorandum Opinion (ECF No. 136) and accompanying Order (ECF No. 137) granting Plaintiff's Motion for Summary Judgment in part. (Mem. Op. at 20; Order at 1.) The Court found that a "transfer" did occur under the terms of the Note and Security Instrument. (Mem. Op. at 14-15.) Because a "transfer" occurred and Defendant CG Bellkor, LLC ("Bellkor") did not take safe harbor in remedying that "transfer," Bellkor faces personal liability on the Note. (Mem. Op. at 14-15.) Further, because Defendant Jonathan Bell ("Bell") signed a valid guaranty, Bell is personally liable for Bellkor's obligations under the terms of the Guaranty. (Mem. Op. at 18-19.)

On August 13, 2013, the parties filed a Joint Motion to Approve Agreement Regarding Plaintiff's Claim for Attorney's Fees (ECF No. 116), agreeing that the parties would not raise any

issues related to Plaintiff Federal National Mortgage Association's ("Fannie Mae") legal fees and expenses under Federal Rule of Civil Procedure 54 until after a resolution on the merits. The Court entered an Order (ECF No. 121) granting the Joint Motion on August 14, 2013. Having granted Plaintiff's Motion for Summary Judgment and resolving the case on the merits, the Court directed the parties to file supplemental briefs on the issue of damages consistent with the Court's rulings. (Mem. Op. at 19.)

## II. Discussion

In accordance with the Court's Order, Fannie Mae filed its Supplemental Brief Regarding Damages (ECF No. 138). Fannie Mae asserted that the "transfer" triggered Bellkor's personal liability on "all of the Indebtedness" on the Note. (Pl.'s Supplemental Br. Regarding Damages "Pl.'s Br." at 1.) Accordingly, Bell was personally liable for "all of the Indebtedness" as well. (Pl.'s Br. at 1.) Under the terms of the Note, "Indebtedness" included "principal, interest, default interest, prepayment premiums, late charges, advances to protect the security, and any other amount due under the Note." (Pl.'s Br. at 2; Note (ECF No. 79-1) ¶ 1.)

First, Fannie Mae assessed all amounts due on the Note. (Pl.'s Br. at 1-3.) Fannie Mae determined that amount to be $10,705,362.03. (Pl.'s Br. at 4.) Second, Fannie Mae applied credits against all amounts due on the Note. (Pl.'s Br. at 3-4.) Fannie Mae determined that Bellkor had credits totaling $5,630,246.64. (Pl.'s Br. at 4.) In total, Fannie Mae determined that Bellkor owed the sum of $5,284,576.68. (Pl.'s Br. at 4.) In an amended filing, Fannie Mae reduced the total amount due to $5,252,095.03, reflecting the removal of certain real estate taxes paid in June 2013 by the Substitute Trustee. (Pl.'s Reply to Def.'s Resp. to Supplemental Br. Regarding Damages "Pl.'s Reply" (ECF No. 146) at 1-2.) Further, *per diem* interest accrued at the default rate of 9.775%, or $1,369.56 from November 1, 2013. (Pl.'s Reply at 2.)

Defendants responded to Fannie Mae's calculation of damages stating that "Defendants do

not contest Plaintiff's . . . calculation of the total indebtedness under the Note." (Defs.' Resp. to Pl.'s Supplemental Br. Regarding Damages "Defs.' Br." (ECF No. 140) at 1.) The sole objection was that $12,679.67[1] included in Fannie Mae's calculation had already been awarded to Fannie Mae pursuant to this Court's Order ("Civil Contempt Order" (ECF No. 131)). (Defs.' Br. at 1.) Accordingly, Defendants ask the Court to reduce the amount of damages by $12,679.67, because inclusion of that amount in the total indebtedness under the Note would amount to double recovery for Fannie Mae. (Defs.' Br. at 1-2.)

In calculating the total indebtedness on the Note, Fannie Mae included the "improper diversion of $101,027.71 from rents generated by the Property." (Pl.'s Br. at 4 (citing Pl.'s Mem. in Supp. of Mot. for Summ. J. "Pl.'s Summ. J. Mem." (ECF No. 91) at 20-27).) This included $42,464.31 in payments to OHI Management in February and March of 2013. (Pl.'s Summ. J. Mem. at 23.) The calculation of the $42,464.31 included three withdrawals on March 18, March 20 and March 22, 2013. (Pl.'s Summ. J. Mem. at 9-10.) The withdrawals totaled $17,959.67. (Pl.'s Summ. J. Mem. at 10.)

On August 27, 2013, this Court entered its Civil Contempt Order finding that Bell had made those three withdrawals in violation of the Court's Receivership Order (ECF No. 58) and ordered

---

[1] On July 2, 2013, the Court entered an Order (ECF No. 89) that required Bellkor to pay Fannie Mae $1,887.50 in attorneys' fees and costs, because Bellkor failed to produce a witness prepared to testify after Court ordered Depositions. (Order at 1-2.) On July 10, 2013, the Court entered a second Order (ECF No. 94) that required Bellkor to pay Fannie Mae an additional $3,392.50 in attorneys' fees and costs, because Defendants failed to appear for the continued deposition on June 24, 2013. (Order at 1-2.) In a third Order ("Civil Contempt Order" (ECF No. 131)), this Court again ordered that Bellkor pay the previously awarded $5,280 in attorneys' fees and costs. (Civil Contempt Order at 1.) Additionally, in the same Civil Contempt Order, the Court ordered that Bell repay $17,959.67 that Bell withdrew in violation of the Court's Receivership Order (ECF No. 58). (Civil Contempt Order at 2.) It appears that Defendants have reduced the $17,959.67 that the Court ordered that *Bell* repay in the Civil Contempt Order by $5,280 — the attorneys' fees and costs owed by *Bellkor* under the previous Orders — thereby contesting only a portion, specifically $12,679.67, of the amount owed on the Note. Because Bell is the responsible party for the full $17,679.67 rather than Bellkor, the Court will not reduce Bell's liability by Bellkor's attorneys' fees and costs. As such, the Court will discuss the inclusion of the disputed amount as Bell's full $17,679.67 repayment.

3

that Bell return the $17,959.67 within fourteen days. (Civil Contempt Order at 2.) Bell has failed to return the funds withdrawn in violation of the Court's Receivership Order. (Pl.'s Second Status Report Regarding Jonathan Bell's Resp. to August 27, 2013 Order at 1-2.) Defendants assert that inclusion of that amount would amount to a double recovery for Fannie Mae, because the Court has already ordered that Bell return that amount in the Court's Civil Contempt Order. (Defs.' Br. at 1.)

The Court has already found that Defendant Bell faces $17,959.67 of liability for the withdrawals under the Court's Civil Contempt Order. Defendant Bell faces this liability, because he withdrew funds in direct violation of the Court's Receivership Order. Consequently, Bell is liable for violating the Court's Receivership Order in the amount of $17,959.67. As such, Bellkor is not responsible for that amount under the terms of the Note and should not face liability on those amounts, because the Court has already determined that Bell is the responsible party for those withdrawals. Because Bell faces liability of $17,959.67 for violating the Court's Receivership Order, that amount will not be included in calculating Bellkor's indebtedness on the Note.

Because no dispute exists as to the calculations other than the $17,959.67, the Court accordingly reduces the calculated amount due under the Note to $5,234,135.36. Bellkor faces liability on the Note in the amount of $5,234,135.36. Defendant Bell, under the terms of the Guaranty, is personally liable for Bellkor's obligations under the Note. Defendant Bellkor still must pay $5,280 in attorneys' fees and costs under this Court's three previous Orders. Further, Defendant Bell still must pay to Fannie Mae $17,959.67 for his violation of the Court's Receivership Order as provided in the Court's Civil Contempt Order.

### III. Conclusion

For the reasons set forth above, the Court finds that Defendant Bellkor is liable on the Note in the total amount of $5,234,135.36 as of October 31, 2013. Interest accrued from that date until the date of entry of this Memorandum Opinion at the Note's default rate of 9.775%. Accordingly,

the *per diem* interest starting November 1, 2013, amounts to $1,364.88, for a total of $35,486.88. Defendant Bellkor, therefore, is liable for $5,269,622.24 on the Note. Interest on this judgment will accrue at the statutory rate set forth in 28 U.S.C. § 1961. Further, Defendant Bellkor remains liable for $5,280 in attorneys' fees and costs from the Court's previous Orders.

Defendant Bell is liable for Defendant Bellkor's indebtedness on the Note under the terms of the Guaranty — $5,269,622.24 plus statutory interest — and for $17,959.67 in repayment of withdrawals in violation of the Court's Receivership Order as detailed in the Court's Civil Contempt Order.

Let the Clerk file this Opinion electronically and notify all counsel accordingly.

It is so ORDERED.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: November 26, 2013